37890. CALLAWAY MILLS COMPANY *v.* HURLEY.

DECIDED NOVEMBER 10, 1959—REHEARING DENIED
DECEMBER 2, 1959.

*B. J. Mayer, Lovejoy & Mayer,* for plaintiff in error.
*Richter & Birdsong,* contra.

CARLISLE, Judge. This is a workmen's compensation case brought by the widow of a deceased employee to recover for his death. The evidence adduced on the trial before a single director showed substantially that the deceased, Charles Homer Hurley, a man 48 years old, 5 feet 11 inches tall, weighing 210 pounds, worked on the 10 p.m. shift for Callaway Mills Company at its Hillside Cotton Mills where he was a card grinder. For some time prior to his death, the deceased had complained to his wife and family at intervals of a chest pain which radiated down his left arm and which was attended by shortness of breath. During his lifetime, this condition apparently was never diagnosed, but the doctors who testified on the trial were of the opinion that he was suffering from angina pectoris. Nevertheless, during the six months immediately preceding his death, he had worked 880 hours out of 920 hours which the mill ran. On the night in which he died, the deceased was driven to the mill by his son. The car was parked a short block from the rear gate of the mill and the deceased walked to the gate and from the gate up a concrete walk to the back entrance of the mill. According to the testimony, this journey was over a slight upgrade, the distance from the rear gate to just inside the rear entrance of the building being less than 100 yards, along a concrete walk in which there were several flights of one to six steps each, and each step being approximately six inches high, the total number of steps in the walk altogether being eleven. After entering the

building, the deceased rode an elevator to the third floor where he walked some 75 or 80 feet across a level floor to the secondhand's office where he stopped and had some conversation with the secondhand about the job to be done that night. After that he walked 59 feet to a coca-cola box and drank a coca-cola and then walked some 335 feet to the cardroom annex where he walked about placing various employees on their jobs and telling them what to do. Apparently, as he had finished placing the other employees on their jobs he turned to walk away and fell in an aisle without striking anything except the floor and apparently died instantaneously.

The doctor who examined him and signed the death certificate stated that it was his opinion, though not supported by an autopsy, that the cause of death was a myocardial coronary infarction, which is the blockage or stoppage of an artery by a blood clot shutting off the supply of blood to the heart and which causes instant death. In response to hypothetical questions as to whether the exertion which the deceased had engaged in immediately prior to his death could have had any causal connection with it, the sum and substance of the doctor's reply was that he could not say whether it did or did not have any causal connection with it. Another doctor testified on behalf of the claimant, and his testimony with regard to this issue may be summed up by simply stating that he said all that he could say was that what the deceased was doing immediately prior to his death could have had some causal connection with the coronary accident which resulted in his death. Both doctors were of the opinion that the deceased would probably have died anyway had he stayed at home that night.

In *Hoffman* v. *National Surety Corporation,* 91 *Ga. App.* 414, 417 (85 S. E. 2d 784), Judge Townsend, speaking for this division of this court, after reviewing the facts and rulings thereon of the Court of Appeals and of the Supreme Court in several prior cases, said in stating what quantum of evidence is necessary in a workmen's compensation case like that now before the court in order to make out a case authorizing an award of compensation: "From the above, it must be concluded that it must

be shown by evidence, opinion or otherwise, that the exertion attendant upon the duties of employment, no matter how slight or how strenuous, and no matter with what other factors—such as pre-existing disease or predisposition to attack—it may be combined, was sufficient to contribute toward the precipitation of the attack. Where evidence as to the work engaged in shows it to be sufficiently strenuous, or of such a nature that, combined with the other facts of the case, it raises a natural inference through human experience that it did so contribute, this is sufficient. In other cases, the opinions of experts that the exertion shown by the evidence to exist would be sufficient is also sufficient to authorize a finding on the part of the fact-finding tribunal that it did. But, in one way or another, the fact must appear." The facts in that case, while varying in their details, are not unlike those in this case. This court there held that, in the absence of expert medical testimony that the exertion of the deceased *did* contribute to or cause his death, the proven facts were insufficient to authorize an award of compensation.

The plaintiff relies principally on the cases of *United States Casualty Co.* v. *Richardson*, 75 *Ga. App.* 496 (43 S. E. 2d 793); *Bussey* v. *Globe Indemnity Co.*, 81 *Ga. App.* 401 (59 S. E. 2d 34); *Globe Indemnity Co.* v. *Brooks*, 84 *Ga. App.* 687 (67 S. E. 2d 176); *Atlanta Transit Co.* v. *Knight*, 92 *Ga. App.* 469 (88 S. E. 2d 738); and *Refrigerated Transport Co.* v. *Shirley*, 93 *Ga. App.* 334 (92 S. E. 2d 26). The distinction between those cases and this case is clear. In each of those, the evidence showed that the work engaged in by the deceased was sufficiently strenuous or of such a nature that, combined with the other facts in the case, it raised a natural inference through human experience that it did contribute to the death or there was positive medical testimony that the exertion shown by the evidence would be, or was sufficient to cause the death. The distinction in those cases and in this case is well stated by the late Judge Parker in *United States Casualty Co.* v. *Kelly*, 78 *Ga. App.* 112, 116 (50 S. E. 2d 238), in distinguishing that case and the case of *Woodruff* v. *American Mutual Liability Insurance Co.*, 67 *Ga. App.* 554 (21 S. E. 2d 298), where he said, "The distinguishing

features between this and the *Woodruff* case are numerous, as a careful reading of that case will show. The distinction of controlling importance, however, is that in that case the most that could be said of the testimony in favor of the claimant was that the injury *could* have been a factor in the death, whereas here the doctors testified that such an injury *would* aggravate the heart condition of the deceased. As there used, the word 'could' merely expresses 'a contingency that may be possible' and nothing more. Webster's New International Dictionary (2d ed., 1934). 'Would' on the other hand means *necessarily will* and expresses an element of certainty far greater than that expressed by 'could'; and testimony that the injury would cause an aggravation is sufficient to sustain the award."

As may be seen by the statement of the facts above, the physical facts as shown by the evidence were insufficient to raise an inference through human experience that the activity and attendant exertion of the deceased had any causal connection with his death (*Hoffman* v. *National Surety Corp.*, 91 *Ga. App.* 414, supra), and since the medical testimony, at most, was merely that it was possible that there was some connection, it was insufficient to carry the burden cast upon the plaintiff, and the State Board of Workmen's Compensation, consequently, erred in entering an award granting compensation, and the superior court erred in affirming that award.

*Judgment reversed with direction that the case be remanded to the State Board of Workmen's Compensation with leave to the claimant, if she desires, to present testimony on this issue. Gardner, P. J., and Townsend, J., concur.*

TOWNSEND, Judge, concurring specially. While I remain of the opinion that my views as expressed in *Hoffman* v. *National Surety Corp.*, 91 *Ga. App.* 414 (85 S. E. 2d 784) and *Refrigerated Transport Co.* v. *Shirley*, 93 *Ga. App.* 334 (92 S. E. 2d 26) are in conformity with *Hartford Accident &c. Co.* v. *Waters*, 87 *Ga. App.* 117 (73 S. E. 2d 70) and like cases, and are also in conformity with each other, I have experienced great difficulty applying the quantum of evidence rule to this case, for the reason that both the amount of exertion shown and the quality of medical testimony are at most at a bare minimum from the claimant's point

of view. I am of the opinion that when employment is shown, and even very slight exertion is shown, that it is still not absolutely necessary to have the positive testimony of a medical witness that the exertion *did* contribute to, or *would* contribute to the attack, but, as shown in *U. S. Casualty Co.* v. *Richardson*, 75 *Ga. App.* 496, 503 (43 S. E. 2d 793), testimony of a medical witness that a particular state of facts *could* have contributed to the injury is sufficient to allow the fact-finding tribunal to determine in its own discretion whether in fact the state of facts shown did so contribute.

The only exertion shown here is that the decedent climbed 12 steps before reporting to work, and, after reporting, walked about 400 feet while giving directions to other employees. I think, applying the rule in the *Hoffman* case, supra, that if a medical witness simply stated this could have contributed to the attack, the question of whether it did would then be for the hearing director and neither this court nor the superior court should reverse. The medical witness here did say that exertion generally could contribute to an attack; he then said the question as to the particular exertion shown in this case would have to be answered in a negative way, that "I can not say it could not have contributed. I can not fully say that it can if you want me to answer this question as such could it have and I will have to say it could have." All of this doctor's testimony indicates that he had no real opinion as to whether the exertion shown could or could not have contributed. I would have been inclined to affirm this case; nevertheless, the only medical testimony on which the award can be based, in view of the very slight amount of exertion shown, is in fact the equivalent of no evidence at all. I accordingly agree to a reversal of this case for the purpose of obtaining further medical testimony on this point.